Annie  E.  McCabe,  Admx.,  vs.  Narragansett  Electric
Lighting  Co.

PROVIDENCE—JUNE 23, 1905.

Present:  Dubois and Blodgett, JJ.

<(1)   Death by Wrongful Act.   Damages.

The statute in relation to death by wrongful act (Gen. Laws cap. 233, § 14)
    does not permit evidence of loss of the parental care of a deceased father
    as an element of damage to a surviving child.   The statute does not require
    evidence of interest or special damages on the part of the next of kin, but
    contemplates a right of action for the death of a relative who was of pro-
    ductive value in the community from the mere fact of kinship.
Under the above statute in case of death the action should be considered as
    though it were brought in behalf of the estate of the deceased for the damage
    to that estate caused by the death in question.

Trespass  on  the  Case  for  negligence.   Heard on motion
for re-argument after opinion reported in 26 R. I. 427.   Motion
denied.

Blodgett, J.   After the filing of the opinion in this case,
reported in 26 R. I. 427, granting a new trial on the question
·of damages only, the plaintiff has moved for a re-argument on
various grounds, but principally contesting the propriety of the
rule therein set forth for the computation of damages at such
new trial, claiming, *inter alia,* that the loss of the parental care
·of the deceased father is proper to be computed as an element of
damage to the surviving child, who, at the time of the accident,
was an infant of the age of thirteen months.

A similar question was presented in the case of *St. Lawrence
& Ottawa Railway Co.* v. *Lett,* 11 Canada, 422, in which the
provisions of Lord Campbell's Act, as it appears in Cons. Stats.
Canada, chap. 78, §§ 2 and 3, and upon which the statute
of this State which authorizes the action in the case at bar
also is founded (Gen. Laws cap. 233, § 14), were discussed at
length in the majority and minority opinions of the Supreme
Court of Canada and the English and American decisions con-
sidered and compared.   Three justices favored the allowance

of such damages in an opinion which commands respect for the strength of its reasoning, even though the differences in our statute, added to the strength of the reasons advanced by the two justices who dissented, compel us to refuse to follow the rule as established by the majority opinion.

Our statute provides: "Whenever the death of a person shall be caused by the wrongful act, neglect, or default, of another, and the act, neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony. Every such action shall be brought by and in the name of the executor or administrator of such deceased person, whether appointed or qualified within or without the State, and the amount recovered in every such action shall one-half thereof go to the husband or widow, and one-half thereof to the children, of the deceased, and if there be no children the whole shall go to the husband or widow, and, if there be no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate: *Provided*, that every such action shall be commenced within two years after the death of such person. If there is no executor or administrator, or if, there being one, no action is brought in his name within six months after the death, one action may be brought in the names of all the beneficiaries, either by all, or by part, stating that they sue for the benefit of all, and stating their respective relations to the deceased: *Provided*, that if all do not bring such suit, only those bringing it shall be responsible for costs; but judgment shall be for the benefit of all, and shall be entered as several judgments for each in his proportion as aforesaid, and executions thereon shall issue in favor of each respectively; *Provided, further*, that if such action be brought by the beneficiaries, no action shall thereafter be brought by the executor or ad-

ministrator.    There shall be but one bill of costs in favor of
the plaintiffs, which shall enure equally for the benefit of those
bringing the suit, and of them only."

Section 3 of the Canada statute, however, is widely different
in this respect, and contains the provision for apportionment
of damages contained in Lord Campbell's Act (9 and 10 Vict.
C. 93, § 2), viz.: "in every such action the judge or jury may
give such damages as they think proportioned to the injury,
resulting from such death, *to the parties respectively*, for whom
and for whose benefit, such action has been brought; and the
amount so recovered, after deducting the costs not recovered
from the defendant, shall be divided amongst the before-men-
tioned parties, in such *shares as the judge or jury by their verdict
find and direct*."

After reciting the evidence as to the mother's death, it
appears (p. 440), as follows: "Upon this evidence the jury
rendered a verdict for the plaintiff with $5,800 damages, dis-
tributed as follows: "To the plaintiff" (husband) "himself,
$1,500; to the child aged 21, a daughter, $600; to the child
aged 19, a son, $400; to the one aged 16, a son, $800; to the
child aged 14, a daughter, $1,200; and to the child aged 11, a
son, $1,300." There were also a daughter of thirty and a son
of twenty-two, to whom the jury made no allowance.

These facts are sufficient to show that the statute then under
consideration both permits and requires a computation of the
amount of damages sustained by each beneficiary. Our own
statute, on the contrary, contains no such provision, but dis-
tributes the total amount of damages recovered according to a
fixed rule, one-half to the husband or widow and the remainder
"in the proportion provided by law in relation to the distribu-
tion of personal property left by persons dying intestate,"
and without regard to the greater or less damage suffered by
any beneficiary.

If the rule contended for were to be adopted here, it would
follow that one-half of the damages found to be established or
sustained by the child as a special and peculiar loss, because
of the deprivation of parental care, must be paid to the sur-
viving parent if there be one, or, if there be none, and the jury

should find, as they did find in the case cited, that two children sustained no damage and that no two of the five remaining children sustained the same damage, nevertheless the damages must be distributed to all in equal proportions, thus giving gratuitously to some of them that to which they were not entitled, by unjustly depriving the remainder of their lawful due.

Again, in the case cited the jury allowed the plaintiff husband but $1,500 of a total amount of $5,800.   Under our law he would have been entitled to $2,900, or $1,400 more than the proved amount of his loss upon the evidence, and this excess of $1,400 thus unjustly given to him must be taken with perhaps greater injustice from the amounts to which the children had established by the evidence that they were entitled.

In like manner, if the rule in question were to be adopted in this State, it would result that the special and peculiar damages proved to have been sustained by any one of these five children for loss of parental care would be diminished first by one-half payable to the parent, and then, inasmuch as our statute includes all the next of kin, the two children, aged thirty and twenty-two, respectively, who were found on the evidence to be entitled to no damages, must be included equally with the five children found entitled to damages in the distribution of the remaining half, with the result that six-sevenths of the remaining half must be deducted and paid in equal shares to the other children, thus leaving but one-fourteenth of such damages to the child and donating thirteen-fourteenths thereof to others not entitled thereto.

To the foregoing objections there is to be added the further objection that there is no exact basis of estimating the value of the parental care and services lost.   In such a case the future presents a speculative composite of probabilities and possibilities based only on uncertainty.   The father may not live out the average expectation of life, or may become incapacitated, through disease or otherwise, either from caring for the child at all or from giving the same care to the child.   Again, the child may die in minority and before the death of the father, or, if the child reaches adult years, may cease to be aided by

the father, who, in turn, may, from misfortune or otherwise, become a charge upon the filial obligation of the child. Again, other children may be born to a father and thus diminish the parental care possible to be given to any child in proportion to the number of children so dependent upon or entitled to parental support. It follows that it is impossible to determine with certainty that any pecuniary benefit would continue to accrue for any given period to the child, or, if so, the amount of it.

And a still further objection is thus stated in the terse and vigorous language of Mr. Justice Gwynne, as follows (p. 445): "These benefits which spring from parental love and affection are neither procured nor procurable with money, and are therefore insusceptible of having a pecuniary value attached to them, and their loss, therefore, can not be estimated in money. To throw a case into a jury-box, with a charge that the action lies on proof of death by negligence of the defendants, and that it rests with the jury to measure the value of the loss to a child by the possibility of benefit of which it is deprived by the death of its mother, without any standard existing by which the estimate can be made, could not fail to result in a verdict for the plaintiff in every case with damages against defendants, by way merely of punishing them for their having caused the death, a result which can not have been within the contemplation of the statute, which only authorizes damages to be given proportionate to the injury resulting from the death to the parties on whose behalf the action is brought. . . .

"In my judgment there is no standard by which a pecuniary estimate can be made of the injury resulting to the children for their being deprived of the possibility of their receiving such maternal care and advice, and that therefore such an injury is not cognizable under our statute. If the loss of maternal advice be a ground for compensation that would open enquiries as to the nature, the quality and value, of the advice, of which having been given there should be some evidence. This, in my opinion, never could have been contemplated by the statute, and no defendant could venture to enquire as to

such particulars without exposing himself to heavy damages for his temerity."

If these observations be well founded in respect of a statute whose provisions call for an exact determination of the damages of each plaintiff, they appeal with far greater force in respect of our statute, which not only does not permit such an apportionment, but, under such a rule, would deprive one child of his due for the unjust enrichment of another thereby.

The difficulties in the application of this rule in such cases, even under Lord Campbell's Act, are strikingly illustrated in an article in 18 London Jurist, Part 2, 1, cited in 2 Redfield on Railways, 6th ed. 289, "where the case is put of an accident by which 'an archbishop, a lord chancellor, an East Indian director, a lunatic, a wealthy but immoral man, and one virtuous but a bankrupt,' are killed, and the jury are imagined as attempting to determine· 'the pecuniary value of the parental care, protection, and assistance of each.'"

In *Railroad Company* v. *Barron*, 5 Wall. 90, the United States Supreme Court say in speaking of the Illinois statute then under consideration, the second section of which is as follows:

"Sect. 2.   Every such action shall be brought by and in the name of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the *exclusive benefit of the widow and next of kin of such deceased person*, and shall be distributed to such widow and next of kin, in the proportion provided by law, in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation *with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person*, not exceeding the sum of five thousand dollars."

(p. 105.)   "The first section gives the action against the company for the wrongful act, if death happens, in cases where, if the deceased had survived, a suit might have been maintained by him.   The second restricts the damages in respect both to the principles which are to govern the jury, and the amount.

They are confined to the pecuniary injuries resulting to the wife and next of kin, whereas if the deceased had survived, a wider range of inquiry would have been admitted. It would have embraced personal suffering as well as pecuniary loss, and there would have been no fixed limitation as to the amount. . . .

"So when the suit is brought by the representative, the pecuniary injury resulting from the death to the next of kin is equally uncertain and indefinite. If the deceased had lived, they may not have been benefited, and if not, then no pecuniary injury could have resulted to them from his death. But the statute in respect to this measure of damages seems to have been enacted upon the idea that, as a general fact, the personal assets of the deceased would take the direction given them by the law, and hence the amount recovered is to be distributed to the wife and next of kin in the proportion provided for in the distribution of personal property left by a person dying intestate. If the person injured had survived and recovered, he would have added so much to his personal estate, which the law, on his death, if intestate, would have passed to his wife and next of kin; in case of his death by the injury the equivalent is given by a suit in the name of his representative."

(1)   We are of the opinion that a similar rule of construction should be adopted in respect of our statute, and that in case of death the action should be considered as though it were brought, in behalf of the estate of the decedent, for the damage to that estate caused by the death in question. In this respect a distinction may well be made between statutes which, like the original Lord Campbell's Act and the statutes following its provisions, and permitting and requiring the computation and assessment of damages to each beneficiary and separate awards thereof in each case, and our own statute, which permits of no such apportionment, but rather, makes the amount recovered to be, as it were, assets of the estate, to be distributed nevertheless arbitrarily as intestate estate, even though the decedent should have left a last will and testament whose residuary clause may have donated the residuum of his estate to a charity, or even if he should have deceased insolvent.

A further comparison of Lord Campbell's Act with our statute shows that the measure of damages under the former is the actual damage sustained, and hence that the former may be said to be an action in behalf of each beneficiary, while under our statute no beneficiary save a sole surviving child or a surviving widow or husband, when there is no surviving child, can ever receive the whole amount of damages which may be shown by the evidence to be peculiar and special damages, sustained by such beneficiary, but must receive only such proportionate part thereof as he would be entitled as "next of kin" in other assets of the decedent's intestate estate, and hence that the action should be considered rather as though it were brought in behalf of the estate than in behalf of such beneficiary.

Indeed, if the decedent be a widow leaving children, it is obvious that the distribution must be made equally among all the children, although no one of them may have been dependent upon the mother. If the decedent widow leave no child, but only a dependent widowed mother, and also brothers and sisters, or their descendants of whatever age and although independent of the decedent, yet the right of action accruing to the dependent mother enures to the benefit of all in proportion to their respective shares as "next of kin," and the amount justly due to the decedent's mother alone, because of the damage which she only has sustained, is diminished precisely in proportion as the number of such brothers and sisters or their descendants, who have sustained no damage whatever, is increased.

Moreover, our statute does not require evidence of interest or special damages on the part of any of such next of kin, but apparently contemplates a right of action for the death of a relative who was of productive value in the community, from the mere fact of kinship as therein specified. If evidence of special damage were required in respect of one of such next of kin, it would follow as a consequence that all the damages should be recovered and be distributed to that one to the exclusion of all others; whereas, in fact, the statute distributes the whole amount recovered equally among all who stand related in the same degree to the decedent.

It is unncessary to pursue the difference further; and it is sufficient to say that we decline to adopt a rule which would permit a surviving child to clearly establish a definite sum as such special and peculiar damage only to have that amount arbitrarily increased or diminished according to a fixed rule of law.

In *Pennsylvania R. R. Co.* v. *Butler*, 57 Pa. St. p. 338, Sharswood, J., thus defines the rule which should prevail: " After an attentive examination and review of all the cases which have heretofore been decided, we are of opinion that the proper measure of damages is the pecuniary loss suffered by the parties entitled to the sum to be recovered—in this instance the children of the decedent—without any *solatium* for distress of mind; and that loss is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability and disposition to labor, and his habits of living and expenditure." Affirmed in *Mansfield Coal, &c., Co.* v. *McEnery*, 91 Pa. St. p. 189; *Lehigh Iron Co.* v. *Rupp*, 100 Pa. St. p. 99; *McHugh* v. *Schlosser*, 159 Pa. St. p. 486; and *McCafferty* v. *R. R. Co.*, 193 Pa. St. p. 346 (1899). And see *Walker* v. *R. R. Co.*, 104 Mich. 617, affirmed in *Walker* v. *Lake Shore Ry. Co.* 111. Mich. p. 521 (1899); *Rouse* v. *Detroit Electric Railway*, 128 Mich. 155 (1901).

The other grounds urged for a re-argument were considered in the opinion heretofore filed, and we see no reason to change the views there expressed.

Motion for re-argument denied.

*P. Henry Quinn, David S. Baker, and Lewis A. Waterman,* for plaintiff.

*Vincent, Boss & Barnefield, and Edward D. Bassett,* for defendant.