Sigmund W. Fischer, Jr., Asst. Atty.-G., Charles P. Sisson, Attorney-General, for State.

Peter W. McKiernan, John C. Going, Ernest L. Shein, for defendant.

STATE vs. WAH LEE.

JANUARY 17, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEETLAND, C. J.   The above entitled case is a criminal complaint now pending in the District Court of the Sixth Judicial District in which it is charged that the respondent Wah Lee, conducts a public laundry in violation of Section 2, Chapter 1200 of Public Laws 1928.

After hearing, the associate justice of said court certified to this court for determination the following question as one of doubt and importance in the opinion of said justice. "If a person operates and conducts an establishment having signs with the word 'Laundry' printed thereon attached to the building in which such establishment is located, solicits laundry business from the general public for profit, receives soiled clothes to be washed, cleaned and ironed, sends those clothes to a wet wash laundry operated by some person other than the defendant, for washing, and upon their return to the person operating and conducting the establishment first in this question mentioned, starches, irons and prepares them for delivery in packages to the customers, said establishment being equipped with electric ironing machines, flats, starching materials and apparatus, which electric ironing machines, flats, starching materials and apparatus are used by the person first mentioned in this question in such starching, ironing and preparing for delivery (but such person does no washing of clothes on his premises), is such an establishment to be deemed a 'public

laundry' within the meaning of Section 1, Chapter 1200 of the Public Laws of 1928?"

Section 1, Chapter 1200, Public Laws 1928, so far as the same relates to the question before us is as follows: "Section 1. In this act unless the context otherwise requires 'Public Laundry' shall mean and include any plant or equipment conducted or operated as a laundry for profit, and for which business is solicited from the general public, but shall not mean or include a laundry operated exclusively for and in connection with a hospital, school or other institution, hotel, boarding-house or private dwelling, nor a laundry operated by one institution which also serves another institution."

Section 2 of said chapter which the respondent is charged with violating, among other things, provides that no person shall conduct or operate a public laundry in any city or town until "the licensing authorities of such city or town shall have caused an inspection to be made of such laundry and shall have issued a permit for the operation thereof" and further that "such permit shall be issued upon such terms and subject to such rules and regulations not inconsistent with law, as said licensing authorities may prescribe for the purpose of protecting the public health and the suppression of insanitary conditions."

It is the contention of the respondent that he is not subject to the provisions of the act for the reason that he does not conduct a public laundry. He bases this contention on the fact that he does no washing upon his premises of the soiled clothes delivered to him by customers, although he performs the other services necessary to be done to return the clothes to the customer in accordance with the respondent's undertaking as set out in the question.

The act does not particularly and comprehensively define a public laundry save as a "plant or equipment conducted or operated as a laundry for profit, and for which business is solicited from the general public." The standard dictionaries define a laundry as "a place where laundering is being

done;" and among the definitions given to the term "to launder" is "to wash, and to smooth with a flatiron or mangle." Webster's New International Dictionary; Century Dictionary.

The act is based upon a legislative determination that the public health is liable to be endangered by the contamination of clothes while they remain in the possession of a public laundry which is maintained in an insanitary condition, or operated in an insanitary manner. The purpose of the general assembly in the enactment, is plainly to guard the communities of the State from this danger by a system of inspection and a control of the operation of such laundries through permits.

In accordance with a fundamental rule, the intent of the general assembly should be the guiding consideration in the construction of the statute; and the words of the statute should be interpreted in the sense in which they are popularly used in the communities to which the statute applies. If the language permits, a construction should be given to the act which best effects the purpose of the legislature.

Whatever may be the etymological derivation of the word, in the social and domestic life of today the popular and ordinary meaning of the term "laundry" used in connection with the word "public" is that of a place to which the public are invited to deliver soiled clothes to be washed, dried, starched, ironed and subjected to the processes ordinarily employed to render soiled clothes suitable for further use. An establishment which performs all or any considerable portion of those services for the public is in common acceptation "a public laundry." We know of no general term other than that of a "public laundry" which would properly designate a place where all of such services are rendered save that of washing the clothes. We think that this is well illustrated by the subject matter with regard to which the question before us arose. It was fully set forth in the arguments of both counsel at the hearing that the respondent is one of a very large class of Chinamen who conduct

establishments throughout all the urban communities of the State; that the proprietor of each of those establishments carries on his business in the same manner as this respondent, and for his own advantage has the washing of the clothes performed by others as set out in the question. It was noticeable that each counsel, apparently for lack of a better designation, constantly referred to those establishments as "Chinese laundries:" It cannot be controverted that for many years they have advertised themselves as laundries, have always been so called in this State, and their proprietors are popularly known as "Chinese laundrymen." It is unreasonable to conclude that the general assembly in adopting this act in the interest of the public health intended to exclude this large number of "Chinese laundries" from the inspection and regulation provided by the act for the purpose of the "suppression of insanitary conditions" in public laundries. The rule of construction applicable to the matter before us is well expressed in the following cases: *McLorinan* v. *Bridgewater Township*, 49 N. J. L. 614, *Whipple* v. *Judge*, 26 Mich. 342.

The respondent relies almost exclusively upon a meaning of "to launder" based upon its derivation: as to pour water upon, to lave, to wash; and he contends that the provisions of this act cannot properly be held to apply save to a plant or equipment where clothes are washed. We have no means of determining the extent of the danger to public health if the clothes of a customer are subjected to insanitary conditions while in the process of washing, as compared to the menace from the same cause during the later processes and manipulations of what is popularly known as a laundry. It cannot fairly be assumed, however, that the general assembly did not intend to guard the clothes from contamination arising from insanitary surroundings during the manipulation of the clothes while drying, and while being prepared for starching and ironing, and during the process of starching and ironing, and while they were waiting to be returned to the customer. A different view

would lead to the unreasonable conclusion that, if the inspection of a public laundry showed the room in which the washing was done to conform to the rules and regulations of the licensing authorities and to be in a sanitary condition, it was the intention of the general assembly that the licensing authorities should disregard perfectly patent insanitary conditions in the other rooms where the later processes of drying, starching and ironing were carried on.

Although the act provides a penalty for its violation nevertheless that imposes no requirement that we must adopt a narrow interpretation of the words employed in strict conformity with their etymological derivation and thus defeat the purpose of the legislature. Whether the construction of this statute should be strict or liberal, its words are to be interpreted in accordance with their popular meaning unless such interpretation does violence to the intent of the general assembly.

In answer to the question certified we say that an establishment such as that described in the question is to be deemed a public laundry within the meaning of Section 1, Chapter 1200 of the Public Laws of 1928.

The papers in the cause with this answer and decision certified thereon are ordered sent back to the District Court of the Sixth Judicial District for further proceedings.

STEARNS, J., dissenting. Section 4 of Chapter 1200, P. L. 1928, is as follows: "No public laundry shall be operated, nor shall collections of articles to be washed or cleaned therein be made in any city or town whose population according to the federal census of 1920 was more than twenty thousand, between the hours of twelve o'clock midnight and five o'clock in the morning of any day, nor at any time during the first day of the week."

Section 5 provides that any person or agent of a corporation or association "operating or maintaining a public laundry or making collections of articles to be washed or cleaned therein contrary to the provisions of this act . . .

or who shall operate or maintain any public laundry without a permit as prescribed in this act shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than ten days or by both such fine and imprisonment, and each day of such operation after due notice from the licensing authorities shall be deemed a separate offense."

This statute creates new criminal offences. The definition of the particular offence in question is uncertain and ambiguous. As it is a penal statute, it is to be strictly construed and the extent of the criminal offence should not be enlarged by a liberal construction.

It is difficult to ascertain from the language of the act the precise intention of this legislation. Section 2 prohibits the operation of a public laundry without a permit from the "licensing authorities," that is: the board of police commissioners, if there is one; the board of aldermen, if there is such a board; otherwise, by the council of each town or each city. Permits are to be issued upon such terms and subject to such rules and regulations as the licensing authorities may prescribe "for the purpose of protecting the public health and the suppression of insanitary conditions."

The act does not prescribe a uniform regulation throughout the State but authorizes variant regulations by different licensing bodies. Section 1 defines a "Public laundry" as any plant or equipment (with certain specific exceptions) conducted as a laundry for profit and for which business is solicited from the general public. The primary and essential meaning of the verb "launder" is "to wash, as clothes;" of "laundry," "a place where laundering is done." Webster's New Inter. Dict. To "launder" also means "to wash and iron."

The act makes criminal the operation of a simple domestic business without an official inspection and a license. The danger to the public from the operation of the plant or equipment, if any, would seem to be from the washing of clothes in polluted water rather than from the finishing process of starching and ironing.

All the parts of the statute are to be considered in deducing the legislative intent. Considering the penal section (5), the grouping in one clause of the two offences, the "operating or maintaining a public laundry or making collections of articles to be washed or cleaned therein," is significant. The collections prohibited are of articles to be washed or cleaned. The word "therein" refers to "Public laundry," which is thus indicated to mean a washing or cleaning plant or establishment, and not one in which starching and ironing only are done.

As the definition of the new offence is ambiguous, I think the prohibition in the statute is restricted to "any plant or equipment" where clothes are washed such as a wet wash laundry and that the business of starching and ironing only is not included therein.

For the reasons stated, I am of the opinion that the establishment in question is not a "public laundry" within the meaning of Section 1.

*Elmer S. Chace, City Solicitor, Clifton I. Munroe, Asst. City Solicitor*, for complainant.

*Baker & Spicer, Albert A. Baker*, for defendant.