E-CON-O-WASH CORP. OF R. I. *vs.* WILLIAM P. SOUSA *et al.*

NOVEMBER 7, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J. This is a bill in equity to enjoin the members of the town council and the chief of police of Bristol

from enforcing the provisions of general laws 1956, §5-16-2, against the complainant. The cause is pending in the superior court on bill, answer and oral proof, but in the course of the proceedings a question of law arose which in the opinion of the trial justice was of such doubt and importance and so affected the merits of the controversy that it ought to be determined by the supreme court. He therefore certified such question to this court pursuant to G. L. 1956, §9-24-27, for our determination.

As so certified the question reads:

> "Do the provisions of Sections 5-16-1 through 5-16-7, inclusive, of Title 5, Chapter 16 of the General Laws of Rhode Island 1956, concerning public laundry, as defined therein, apply to the operation of a so-called launderette or automatic self service wash business by a person or corporation not licensed under the provisions of the above cited statutory sections, the operation of which concerns the following procedures.

> "Twenty-four clothes washing machines of the normal type of automatic home laundry machines are installed in a business premises and open to the public for profit. The washing machines have a cylinder of twenty (20) inches in diameter and a depth of twelve (12) inches and accommodate [sic] 7½ lbs. of clothing at one time. The only change from the usual model used in private homes is the addition of a coin operated box, and the machine bears a manufacturer's commercial model serial number tag.

> "A person desiring to use said machines in the washing of clothes, brings same to the business place and places them in a cylinder or tub of the machine; adds either his or her own soap or detergent or bleach to the clothes concerned, or can obtain same from coin operated machines located in the same business premise. The door of said machine is then closed and a coin inserted in a coin meter box attached to the machine. Electric controls are set by the individual person to regulate the washing, rinsing and spin drying as desired. The clothes are washed, rinsed three times and damp dried automatically without being removed or handled by any persons. There are other facilities in

the premises for the separate drying of clothes previously washed and spin dried as aforesaid, if the particular individual desires to have his or her clothing dried separately. These facilities are in the nature of ten (10) drying machines similar in size and construction to the afore-described washing machines and are available to the public and are operated in the same manner as the washing machines. The only services rendered by the owner of the machines are minor repairs required by the machines in the event of a breakdown. The owner of the machines does not handle, touch or process any of the clothing washed or dried by the person using the particular machine and is not present when the machines are operated by the individual persons.

"The store premises contain no machinery other than the automatic washing and drying machines previously described, and the coin operated detergent and bleach vending machines, previously mentioned. Hot water for the machines is supplied by a hot water boiler located in another part of the premises, and the usual gas and electrical power necessary to operate the machines is furnished by the owner. The operation does not require the presence of any attendants in the premises."

The complainant is conducting an automatic self-service wash business on Hope street in Bristol solely with such coin-operated washing machines and without first obtaining a permit to conduct a public laundry as required by G. L. 1956, §5-16-2. The complainant contends that the statute does not apply to its business because it is not a "public laundry" within the meaning of that term as defined in §5-16-1. It is therein defined as follows: " 'Public laundry' shall mean and include any plant or equipment conducted or operated as a laundry for profit, and for which business is solicited from the general public * * *."

Section 5-16-2 provides in part that "No person shall conduct or operate a public laundry in any city or town until the licensing authorities of such city or town shall have caused an inspection to be made of such laundry and

shall have issued a permit for the operation thereof. Such permit shall be issued upon such terms and subject to such rules and regulations not inconsistent with law, as said licensing authorities may prescribe for the purpose of protecting the public health and the suppression of unsanitary conditions."

The respondents contend that complainant is conducting a public laundry within the intendment of the statute and must therefore comply with such provisions. The complainant argues that it is not subject to the statute because the business of coin-operated self-service washing machines for the use of the public was unknown to the legislature when it enacted the statute. In other words it concedes that its business is public but denies that it is a laundry as contemplated by the legislature at that time.

We cannot agree with complainant's contention. The verb "to launder" means either to wash or to wash and iron. Webster's New International Dictionary, 1931. The place where either work is done is a laundry. And if it is a place where the public generally is so served it is a public laundry. *State* v. *Lee*, 49 R. I. 491. In that case this court construed the statute now under consideration and held that it was intended to apply even to a place where the clothes were only starched and ironed after they had been washed elsewhere. In this connection the court said, at page 494, "An establishment which performs all or any considerable portion of those services for the public is in common acceptation 'a public laundry.' We know of no general term other than that of a 'public laundry' which would properly designate a place where all of such services are rendered save that of washing the clothes."

Although the general assembly has met in annual sessions since 1929 when such construction was declared, the statute has not been amended in any manner so as to alter the meaning then attributed to it. Such long legislative acquiescence in the court's construction may reasonably be

considered to imply legislative approval. *Order of St. Benedict* v. *Town Council*, 84 R. I. 503; *Coone* v. *Coone*, 74 R. I. 232. In the circumstances we are constrained to reaffirm that construction and declare that any place where the service of washing soiled clothes for the general public is performed is a public laundry regardless of the means and methods used in performing such service.

In reaching the above conclusion we have not overlooked certain New York cases which complainant cites as persuasive authority in support of its contention. The statute under review in those cases differs in some of its phraseology from our statute and for that reason we did not find such cases helpful. In the construction of statutes it is not unusual to find that the cases from foreign jurisdictions construing similar statutes in such jurisdictions are of little or no persuasive force because of such variance in phraseology and we have heretofore adverted to that fact. See *Probate Court of East Providence* v. *McCormick*, 56 R. I. 308. In the present instance we have the added reason for not looking beyond our own jurisdiction because of the clearly expressed opinion of this court in *State* v. *Lee*, *supra*.

We answer the question certified for our determination in the affirmative and direct that the papers in the cause be returned to the superior court with our answer certified thereon.

*Leo Patrick McGowan, John P. Bourcier,* for complainant.

*Frank L. Martin,* for respondents.