**Giulia SIMEONE, in her capacity as Administratrix of the Estate of Maria G. Simeone et al.**

v.

**Craig S. CHARRON.**

**No. 99–173–M.P.**

Supreme Court of Rhode Island.

Dec. 1, 2000.

Lauren E. Jones, Frank Caprio, Anthony Caprio, Providence, for Plaintiff.

Sean R. Levin, Warwick, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Can punitive damages be recovered under Rhode Island's wrongful death statute? We confront this issue in the case before us in which the respondent, Craig S. Charron, refused to provide responsive answers to interrogatories propounded by the petitioner, Giulia Simeone. A Superior Court justice ruled that punitive damages are not recoverable and denied the petitioner's motion to compel responsive answers. The petitioner sought certiorari, and we issued the writ. It is our opinion that punitive damages are not recoverable in a wrongful death action under Rhode Island law, but we hold that the petitioner's interrogatories here seek relevant information on the issues of pain and suffering and willfulness or wanton recklessness. Therefore, we deny the petition for certiorari in part and grant it in part.

### Facts and Procedural History

Maria G. Simeone was killed on Fruit Hill Avenue, North Providence, Rhode Island, when the car she was driving was struck by a car operated by respondent. The petitioner, the administratrix of the decedent's estate, brought a wrongful death suit under Rhode Island's Death by Wrongful Act statute, G.L.1956 chapter 7 of title 10 (the act), alleging that respondent "willfully, recklessly or negligently caused" the collision. The petitioner sought pecuniary damages pursuant to § 10–7–1.1, medical expenses pursuant to § 10–7–5, and an award for conscious pain and suffering pursuant to § 10–7–7. In addition, petitioner sought punitive damages in the amount of $10 million.

The respondent admitted in his amended answer that he was negligent and was legally responsible for Maria Simeone's death, but he denied acting willfully or

recklessly, or that his actions conferred to petitioner the right to claim punitive damages.

During the course of discovery, petitioner propounded interrogatories to respondent, seeking details about the collision, the manner in which respondent was driving before the collision, the weather and road conditions at the time of the collision, conversations respondent might have had with others about the collision, whether respondent had consumed alcohol or drugs within twenty-four hours of the collision, his driving record and criminal history, and information about any expert and non-expert witnesses that respondent intended to call to testify. The interrogatories also sought respondent's knowledge of any witnesses to the collision. The respondent objected to most of the interrogatories, stating that because he had admitted liability, the questions were "not relevant to the subject matter of this action." He also asserted that he "would invoke his privilege against self-incrimination as protected by the Fifth Amendment to the Constitution of the United States of America."

In July 1998, after hearing petitioner's motion to compel more responsive answers and respondent's motions to dismiss under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, or in the alternative, to strike petitioner's punitive damages claim, the trial justice denied the motion to compel more responsive answers and granted the motion to strike the punitive damages claim. In finding that a wrongful death action derogated the common law, the justice strictly construed the act to bar punitive damages; she also found that the interrogatories sought irrelevant information not reasonably calculated to lead to admissible evidence.

In response to the administratrix's petition, we issued a writ of certiorari and directed the parties to brief:

"the propriety, based upon [respondent's] admission of liability, of the hearing justice's denial of [petitioner's] motion to compel more responsive answers to interrogatories insofar as those interrogatories relate to compensatory damages."

## Standard of Review

■ This Court limits its review on certiorari to examining the record to determine whether an error of law has been committed. *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I.1997) (per curiam). We do not weigh the evidence presented, but rather we inspect the record to determine whether any legally competent evidence exists therein to support the findings made by the trial justice. *Id.* (citing *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994)).

■ The propriety of the hearing justice's granting respondent's motion to strike the punitive damages claim presents a question of law. Such findings on questions of law are reviewed *de novo* by this Court. *See, e.g., Nonnenmacher v. City of Warwick*, 722 A.2d 1199, 1202 (R.I.1999) (the existence of a contract is a question of law reviewed *de novo* by the Court); *Levine v. Bess Eaton Donut Flour Co.*, 705 A.2d 980, 982 (R.I.1998) (statutory interpretation is a question of law that the Court reviews *de novo*). On the other hand, a trial justice has broad discretion in granting or denying discovery, such as petitioner's motion to compel more responsive answers. *Colvin v. Lekas*, 731 A.2d 718, 720 (R.I.1999). This Court will not disturb such decisions relating to discovery save for an abuse of that discretion. *Id.*

## Punitive Damages

■ Whether punitive damages can be recovered in a Rhode Island wrongful death action is a question of law. In construing the wrongful death statute, this Court has the duty to " 'ascertain the intention behind its enactment and to effectuate that intent.' " *Direct Action for Rights and Equality v. Gannon*, 713 A.2d 218, 224 (R.I.1998).

In our opinion, the Legislature intended to preclude the recovery of punitive damages in a wrongful death action. This intent is made evident by examining the history of the act and the amendments thereto, the case law relating to damages recoverable under the act, and a comparison of the Rhode Island act with wrongful death statutes in other states.

■ If the act derogated the common law,—an issue the parties disputed—it must be strictly construed. *See Providence Journal Co. v. Rodgers*, 711 A.2d 1131, 1134 (R.I.1998) (legislation that is in derogation of common law is subject to strict construction). In fact, this Court has held on numerous occasions that the act is in derogation of the common law and we have therefore construed the act strictly. *Short v. Flynn*, 118 R.I. 441, 443, 374 A.2d 787, 788 (1977); *McFadden v. Rankin*, 46 R.I. 475, 476, 129 A. 267, 268 (1925); *Carrigan v. Cole*, 35 R.I. 162, 165, 85 A. 934, 935 (1913). The petitioner has asked that we follow the precedent of the United States Supreme Court, which allowed punitive damages in a maritime wrongful death action, *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The decisions of the United States Supreme Court, however, have no precedential effect on this issue that must be decided on the basis of state law, notwithstanding interpretations that have construed that Court as having accepted the principle that Lord Ellenborough was wrong in commenting that there was no wrongful death action at common law.[1]

The first sentence of the Rhode Island act, § 10–7–1, granting the right to maintain a wrongful death action, provides that:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages* * *." [2]

It is our opinion that, on the basis of the breadth of its language, this statute provides the sole procedural remedy for wrongful death. Whether the Legislature intended that punitive damages be recoverable cannot be directly ascertained from the statute because the act neither expressly precludes punitive damages, nor expressly authorizes punitive damages. Therefore, we must explore further to ascertain the intent of the Legislature.

### History of the Act and Relevant Cases

First enacted in 1853,[3] the act has been amended numerous times. Although the original language of § 10–7–1 that established the right to bring a wrongful death action for damages has not been changed since 1896, the Legislature proceeded to define pecuniary damages and specify additional damages that may be claimed beyond the original baseline of compensatory damages. Other amendments relating to damages made possible the recovery of medical expenses and lost earning power, G.L.1923 ch. 477, § 1, established a minimum recovery for damages, P.L.1949, ch.

---

**1.** It has long been thought that the basis for the alleged common law rule barring recovery in a wrongful death case was a comment by the English jurist, Lord Ellenborough, who announced in *Baker v. Bolton*, 1 Camp. 493, 170 Eng. Rep. 1033 (1808), that "[i]n a civil court, the death of a human being could not be complained of as an injury."

**2.** This formulation has been retained in numerous reenactments. *See* G.L. 1896, ch.

233, § 14; C.P.A.1905, § 234; G.L.1909, ch. 283, § 14; G.L.1923, ch. 333, § 14; P.L. 1932, ch.1912, § 1; G.L.1938, ch. 477, § 1; P.L.1949, ch. 2332, § 1; G.L.1956 § 10–7–1.

**3.** For a discussion of the origins and history of our wrongful death statute, *see Carpenter v. Rhode Island Co.*, 36 R.I. 395, 397–400, 90 A. 768, 770–71 (1914).

2332, allowed damages for pain and suffering, P.L.1972, ch. 246, permitted unemancipated minors to seek recovery for the loss of consortium, P.L.1982, ch. 217, and allowed spouses recovery for loss of consortium, P.L.1984, ch. 64. Interspersed between the amendments have been court decisions, including early Rhode Island cases and a Federal appellate court case that interpreted the act to provide for compensatory "pecuniary" damages, but not punitive damages. *See, e.g., Williams v. United States,* 435 F.2d 804 (1st Cir. 1970); *Read v. Dunn,* 48 R.I. 437, 440, 138 A. 210, 212 (1927); *Burns v. Brightman,* 44 R.I. 316, 117 A. 26 (1922); *Dimitri v. Peter Cienci & Son,* 41 R.I. 393, 103 A. 1029 (1918); *McCabe v. Narragansett Electric Lighting Co.,* 27 R.I. 272, 61 A. 667 (1905) (*McCabe II*); *McCabe v. Narragansett Electric Lighting Co.,* 26 R.I. 427, 59 A. 112 (1904) (*McCabe I*).

The most pertinent amendment was enacted in the 1971 session of the General Assembly, after the First Circuit Court of Appeals decided *Williams v. United States, ante,* a wrongful death case brought by a father after the death of his nine-year-old son. *Williams* held that the trial court "properly ruled that pain and suffering of the decedent, and of his survivors, *as well as punitive damages,* are excluded" in wrongful death actions under the act. *Id.* at 806 (citing *McCabe I* and *Burns*). (Emphasis added.)

■ A well-established tenet of statutory interpretation posits that the Legislature is " 'presumed to know the state of existing law when it enacts or amends a statute.' " *Providence Journal Co.,* 711 A.2d at 1134; *see also Romano v. Duke,* 111 R.I. 459, 462, 304 A.2d 47, 49 (1973) ("We presume that the Legislature is familiar with the construction we have given the phrase 'personal expenses' in suits brought under the earlier versions of our wrongful death statute."). Thus, when the Rhode Island Legislature amended the act by adding detailed instructions for calculating pecuniary damages, P.L.1971, ch. 46,

and in a second apparent response to *Williams,* by providing for recovery for a decedent's conscious pain and suffering, P.L.1972, ch. 246, we must assume that it was aware that the First Circuit Court of Appeals had interpreted the act to preclude punitive damages.

*Williams* was not the first opinion to address the issue of damages available under the act. The early Rhode Island cases construing damages under the wrongful death statute interpreted the act to allow for compensatory "pecuniary" damages and impliedly excluded punitive damages. In 1904, this Court held in *McCabe I* that "[t]he cause of action is the statutory action given by sec. 14, cap. 233, Gen. Laws, for the recovery of damages for death caused by 'the wrongful act, neglect or default of another,' and *the measure of damages in this form of action is the pecuniary loss sustained."* *McCabe I,* 26 R.I. at 434, 59 A. at 115. (Emphasis added.)

The next year, the Court affirmed *McCabe I's* holding on the damages that are available in a wrongful death action. After citing wrongful death statutes in other jurisdictions, *McCabe II* concluded: "We are of the opinion that a similar rule of construction should be adopted in respect of our statute, and that in case of death the action should be considered as though it were brought, in behalf of the estate of the decedent, for the *damage to that estate caused by the death in question."* *McCabe II,* 27 R.I. at 278, 61 A. at 670. (Emphasis added.) Further, *McCabe II* cited favorably a Pennsylvania "rule which should prevail" that " 'the proper measure of damages is the pecuniary loss suffered by the parties entitled to the sum to be recovered.' " *Id.* at 280, 61 A. at 670. It is clear from these statements that in a wrongful death action, the Court contemplated recovery for compensatory damages, but not punitive damages. This conclusion has been affirmed numerous times. *See, e.g., Read,* 48 R.I. at 440, 138 A. at 212 ("[t]he damages are for, and

are measured by, the loss to the estate of the deceased resulting from the death"); *Dimitri,* 41 R.I. at 394, 103 A. at 1029 (court agreed with plaintiff's contention that "the rule for measuring damages *in all cases* brought under the statute to recover for the death of a person * * * is that laid down in *McCabe [I]* ") (emphasis added). More recently in 1996, in remanding a wrongful death claim to the trial court, this Court concluded, that "punitive damages would be inappropriate on the counts remanded for trial," reflecting our understanding that punitive damages are not recoverable in a wrongful death action. *Clift v. Narragansett Television L.P.,* 688 A.2d 805, 815 (R.I.1996).

Therefore, it is our conclusion that because these decisions expressly or impliedly precluding punitive damages have not produced a legislative response to the issue, we can surmise that the cases have correctly interpreted the statutory intent to bar such damages. *See McFadden,* 46 R.I. at 477, 129 A. at 268 (holding that the Court's position that a wrongful death action could not be brought against the wrongdoer's estate was deduced "[f]rom the fact that the [L]egislature has since these cases were decided made no change in the statutes referred to, [and thus] it is reasonable to infer that the construction of the statutes was in accordance with the legislative intent"). *See also E–Con–O–Wash Corp. of R.I. v. Sousa,* 91 R.I. 450, 453–54, 164 A.2d 851, 853 (1960) (long legislative acquiescence in court's construction could reasonably be considered to imply legislative approval).

## Comparison of the Act with other Wrongful Death Statutes

We derive further evidence of the Legislature's intent to preclude punitive damages in a wrongful death case by comparing the Rhode Island act with statutes in other states. In those states in which punitive damages are allowed in a wrongful death case, the Legislature has either expressly allowed for their recovery[4] or impliedly done so with broad language that the courts have interpreted as granting to a jury or to the court the discretion to award punitive damages.[5] No such explicit or implicit authorization exists in the Rhode Island act.

The petitioner cited numerous cases for the proposition that because courts in other states have allowed punitive damages, we may do the same. *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985); *Gavica v. Hanson,* 101 Idaho 58, 608 P.2d 861 (1980), *overruled on other grounds by Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986); *Behrens v. Raleigh Hills Hospital, Inc.,* 675 P.2d 1179 (Utah 1983); *Bond v. City of Huntington,* 166 W.Va. 581, 276 S.E.2d 539 (1981), *overruled on other grounds by Rice v. Ryder,* 184 W.Va. 255, 400 S.E.2d 263 (1990) (citing superseding statute). In those cases, however, the applicable statutes contained

4. For example, Mass. Gen. Laws Ann. ch. 229, § 2 (West 2000), provides, "[a] person * * * shall be liable in damages in the amount of * * * (3) punitive damages * * * in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant." The New York wrongful death statute, N.Y. Est. Powers & Trust § 5–4.3 (West 1999), states "punitive damages may be awarded if such damages would have been recoverable had the decedent survived." Stuart M. Speiser, *et al., Recovery for Wrongful Death and Injury* § 3A:4 at 3A–20 (3d ed.1992) states that eleven states provide expressly for punitive damages in wrongful death cases.

5. Sixteen states have such wrongful death statutes. *Id.* For example, the Alaska statute provides that in a wrongful death case "the damages therein shall be the damages the court or jury may consider *fair and just.*" Alaska Stat. § 09.55.580 (Michie 1998) (emphasis added); *see Tommy's Elbow Room, Inc. v. Kavorkian,* 727 P.2d 1038, 1048 (Alaska 1986) ("the language of [this section] providing that the court or jury should award the damages it 'may consider fair and just' allows a claim for punitive damages"). See also the cases discussed *post.*

broad language allowing discretion in awarding damages, and the courts in those states noted such authority in their decisions that interpreted their states' acts as permitting punitive damages. For example, in *Behrens*, the Utah wrongful death statute at issue provided that " 'such damages * * * as under all the circumstances of the case may be just' " may be awarded. *Behrens*, 675 P.2d at 1185. In interpreting the statute to allow punitive damages, the Utah Supreme Court wrote, "the statute is broadly phrased and this Court has construed it accordingly." *Id.* (quoting *Jones v. Carvell*, 641 P.2d 105 (Utah 1982)). The court also noted that "the division among the authorities [on the issue of the availability of punitive damages in a wrongful death case] can be traced to material differences in either the governing statute or its legislative history." *Behrens*, 675 P.2d at 1186. *See also Summerfield*, 698 P.2d at 717 ("[t]he phrases 'such damages as are fair and just' * * * invite the court to participate in construing the statutes and setting the parameters of the action"); *Gavica*, 608 P.2d at 863 (court deciding that " 'such damages may be given as under all the circumstances of the case may be just' permits proof and allowance of punitive damages"); *Bond*, 276 S.E.2d at 541, 545 (relying in part on history of liberal construction given by the West Virginia court to the wrongful death statute and a history of finding punitive damages under the statute's "fair and just" standard).

Many states, however, have refused to allow for such recovery in the absence of express statutory authority. *See, e.g., Smith v. Printup*, 254 Kan. 315, 866 P.2d 985 (1993); *Dostie v. Lewiston Crushed Stone Co.*, 136 Me. 284, 8 A.2d 393 (1939); *Smith v. Whitaker*, 160 N.J. 221, 734 A.2d 243 (1999). For example, the New Jersey statute at issue in *Smith*, 734 A.2d at 248, "expressly limited" damages under the act to " 'the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased.' " The court held that, un-

der its statute, punitive damages are not permitted and stated that " '[t]he fundamental purpose of a wrongful death action is to compensate survivors for the pecuniary losses they suffer because of the tortious conduct of others.' * * * An award of damages in a wrongful death action 'is not a matter of punishment for an errant defendant.' " *Id.* (holding that punitive damages are available in a survivor's action, but not in a wrongful death action, and quoting *Alexander v. Whitman*, 114 F.3d 1392, 1398 (3d Cir.1997)). We are persuaded by the general rule that unless the statute expressly or by clear implication confers the right to exemplary damages, none can be recovered in an action for wrongful death.

The Rhode Island act neither explicitly provides for punitive damages, nor does it contain language granting broad discretion in awarding damages which would "invite this court to participate in construing the [act] and setting the parameters of the action." *Summerfield*, 698 P.2d at 717. Instead, the General Assembly, knowing that our case law has precluded punitive damages in wrongful death cases, has chosen to design a statute with detailed damage provisions that do not provide recovery for punitive damages.

■ The argument that barring punitive damages for a wrongful death shelters one whose conduct has resulted in the death of another, but not one who by the same conduct has merely injured another, is a compelling one. This Court, however, is not "entitled to write into the statute certain provisions of policy which the legislature might have provided but has seen fit to omit * * *. * * * If a change in that respect is desirable, it is for the legislature and not for the court." *Elder v. Elder*, 84 R.I. 13, 22, 120 A.2d 815, 820 (1956). If the Legislature chooses to authorize punitive damages in a wrongful death case, it may do so at any time, but, as we have long held, this Court will not broaden statutory provisions by judicial interpretation

unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute. *See Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 682 (R.I.1999) (interpreting the words " 'if there is no husband' " in § 10–7–2 to mean " 'if there is no husband legally entitled to recover' "); *Aetna Casualty and Surety Co. v. Curley,* 585 A.2d 640, 642 (R.I.1991) (refusing to construe the act to allow persons who are the proximate cause of the decedent's demise from recovering wrongful death damages); *Gott v. Norberg,* 417 A.2d 1352, 1356 (R.I.1980) (holding that "the judiciary cannot broaden a statute through interpretation unless the clear purpose of the legislation would fail without the implication"); *Coastal Finance Corp. v. Coastal Finance Corp. of North Providence,* 120 R.I. 317, 325, 387 A.2d 1373, 1378 (1978) (same); *New England Die Co. v. General Products Co.,* 92 R.I. 292, 297, 168 A.2d 150, 154 (1961) (same); *McCaughey v. Tripp,* 12 R.I. 449 (1879) (the term "wrongful act" in the act includes the negligent performance of a lawful act); *Chase v. American Steamboat Co.,* 10 R.I. 79, 86 (1871) (the term "person" in the act includes individuals and corporations), *aff'd,* 16 Wall. 522, 83 U.S. 522, 21 L.Ed. 369 (1872).

Thus, in light of the history of the Rhode Island act, case law, and the absence of a specific statutory provision allowing for punitive damages, we conclude that punitive damages are precluded in a Rhode Island wrongful death suit.

### Motion to Compel More Responsive Answers to Interrogatories

■ Next, we address the denial of petitioner's motion to compel more responsive answers to interrogatories. The petitioner claimed that the disputed interrogatories are relevant to the issue of conscious pain and suffering of the decedent, recoverable under § 10–7–7. We agree.

The trial justice decided that the interrogatories at issue were irrelevant and not calculated to lead to admissible evidence.

Rule 26(b) of the Superior Court Rules of Civil Procedure states that "[p]arties may obtain discovery of any matter not privileged, which is relevant to the subject matter involved in the pending action" and that even inadmissible evidence may be obtained if "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." These provisions are to be construed liberally. *Bashforth v. Zampini,* 576 A.2d 1197, 1201 (R.I.1990).

The petitioner claimed that denying the interrogatories would allow respondent to admit his way "out of the full evidentiary force of the case against" him, and she cited criminal cases in which the trial justice admitted into evidence allegedly irrelevant and prejudicial material. *State v. Ellis,* 619 A.2d 418 (R.I.1993); *State v. Mora,* 618 A.2d 1275 (R.I.1993); *State v. Lionberg,* 533 A.2d 1172 (R.I.1987). In those cases, this Court held that the trial justices did not abuse their discretion in finding that the disputed material was relevant to the state's sustaining its burden on the elements of the crimes charged and in finding that the material was not unduly prejudicial. Here, the question is whether petitioner is being denied the opportunity to sustain the elements of her claim as a result of respondent's admissions of negligence and legal responsibility and the trial court's ruling that the interrogatories are irrelevant.

In our opinion, interrogatories seeking information on even brief conscious pain and suffering before death may lead to admissible information that should not be decided on discovery. Therefore, the trial justice abused her discretion in determining that the interrogatories were not relevant.

The respondent apparently asserted his Fifth Amendment privilege against self-incrimination on the motion to compel more responsive answers to the interrog-

atories.[6] "[T]he Fifth Amendment [protection] against self-incrimination may properly be invoked in a civil proceeding regardless of whether there is a pending criminal matter arising out of the same set of factual circumstances." *Tona, Inc. v. Evans,* 590 A.2d 873, 875 (R.I.1991). When, as here, the court deals with private litigants, "the privilege against self-incrimination must be weighed against the right of the other party to due process and a fair trial." *Pulawski v. Pulawski,* 463 A.2d 151, 157 (R.I.1983). Thus, while a witness cannot be compelled to testify after a valid assertion of the privilege, *id.,* this Court has approved the imposition of sanctions in a civil action upon one who seeks to assert his Fifth Amendment privilege against self-incrimination. *Id.* In addition, adverse inferences may be drawn against a party who refuses to answer relevant questions on the grounds of self-incrimination. *Id.*

The respondent apparently intimated that if a judgment is entered against him in an amount in excess of that provided through his insurer, he would proceed to file for bankruptcy, and, thus, he argued, evidence gleaned via interrogatories is irrelevant. The petitioner, on the other hand, argued that evidence of willfulness and wantonness is relevant to protecting her rights as a potential creditor in a bankruptcy proceeding. The trial justice, in apparent agreement with respondent, ruled that the application of Superior Court rules pertaining to the relevance of evidence in proceedings · in that court trumped any consideration of potential events in other courts. It is our opinion, however, that it is not premature, before any actual bankruptcy petition is filed, to

adduce evidence of willfulness or of wanton recklessness, given that any finding that such was a factor in the death could bar a discharge of the judgment.

### Conclusion

In summary, we grant in part and deny in part the petition for certiorari. We deny certiorari in respect to the petitioner's claim for punitive damages. We grant certiorari in respect to the petitioner's motion to compel more responsive answers to interrogatories. The papers of the case may be remanded to the Superior Court with our opinion endorsed thereon.

---

**6.** It appears that the trial justice found that respondent did in fact assert his Fifth Amendment privilege against self-incrimination, despite, as petitioner noted, respondent's interrogatory response that he "would assert his Fifth Amendment privilege against self-incrimination." This Court has held that "the proper procedure for invoking the Fifth Amendment privilege against self-incrimination in a civil proceeding involve[s] * * *

timely filing motions for protective orders from civil discovery pursuant to Fed.R.Civ.P. 30(b)." *Tona, Inc. v. Evans,* 590 A.2d 873, 876 (R.I.1991) (noting that this federal rule is analogous to Super. R. Civ. P. 26(c)). *See* committee notes to Rule 26 ("Subdivision (c) brings into Rule 26 the prior provisions of Rule 30(b) governing protective orders. The amendment generally tracks the federal rule.").