CLAIRE A. DOSTIE, ADMRX.

*vs.*

LEWISTON CRUSHED STONE COMPANY.

Androscoggin.     Opinion, September 27, 1939.

*Berman & Berman* (Lewiston, Maine), for plaintiff.
*William B. Mahoney,*
*Frank T. Powers,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J.    This is an action brought under Section 9, and Section 10 as amended, of Chapter 101 of the Revised Statutes, for the

benefit of the father and mother of Dominique E. Dostie, who was instantly killed on August 23, 1938, when the automobile in which he was riding as a guest passenger, collided with a truck driven by an employee of the defendant corporation, the Lewiston Crushed Stone Company. After verdict for the plaintiff, the defendant filed a general motion for a new trial.

The collision occurred on the main highway leading from Auburn to Mechanic Falls. As the cars came toward each other, both travelling about thirty miles an hour, and were about one hundred feet apart and each on its own side of the road, the left front tire of the defendant's truck blew out causing it to swerve to the left and across the highway directly in the path of the automobile in which the plaintiff's decedent was riding. The collision which followed badly damaged the cars and so injured the decedent that he died almost immediately and without conscious suffering. It is stipulated on the record that the truck which was in the collision was owned by the defendant corporation and its servant or agent, who was operating it, was acting within the scope of his employment.

The plaintiff's right of recovery is based primarily on the claim that the defendant corporation was negligent in driving its truck, or allowing its employee to drive it, equipped with a defective tire. There is no convincing proof that, after the blow-out, the driver of the truck failed to properly operate the vehicle. Nor can the defendant's contention that the decedent was guilty of contributory negligence be sustained. The case presented is narrowed to the single issue of whether the tire which blew out was defective and the defendant corporation can be charged with actual or constructive knowledge of its condition and held liable for the results which followed.

It is negligence to use an instrumentality which the actor knows or should know to be so defective that its use involves an unreasonable risk of harm to others. If the use of the instrumentality threatens serious danger to others unless it is in good condition, there is a duty to take reasonable care to ascertain its condition by inspection. There is a "generally operative duty of inspection where the circumstances are such as would lead a reasonable man to believe that an inspection is necessary, as where the thing used is

one likely to deteriorate by previous use or other causes or where the actor has some other reason for suspecting that the article may be defective." Restatement, Torts, Sec. 307. In Section 300 of that text, it is pointed out that "the actor's negligence lies in his act of using the defective instrument without adequate inspection, not in his omission to perform his duty of inspection."

In Huddy, Automobile Law, Vol. 3–4., p. 127 *et seq.*, the foregoing rule, as applied to motor vehicles, has been laid down in this language:

"Generally speaking, it is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled, and not become a source of danger to its occupants or to other travelers.

"To this end, the owner or operator of a motor vehicle must exercise reasonable care in the inspection of the machine, and is chargeable with notice of everything that such inspection would disclose."

It is common knowledge that defective tires are a frequent cause of blow-outs which have a known tendency to cause the vehicle to swerve and become unmanageable, involving great risk of harm to others. They may be and often are caused by accidents for which no responsibility exists and the mere fact that a tire blows out does not, without more, render the owner or operator of the automobile liable. The unsafe condition of the tire must be established and that its condition was known to the owner or operator or could have been discovered by the exercise of reasonable care. *Glazer* v. *Grob*, 136 Me., 123, 3 A., (2d), 895. And it is held that "where they (the blow-outs) result from defects in the tire arising from age or wear, there seems little doubt that responsibility should attend the dereliction of the vehicle owner in using such equipment, if the faults would be disclosed on reasonable inspection." *Delair* v. *McAdoo*, 324 Penna., 392, 395, 188 A., 181.

There is no dispute as to the history of the tire that blew out in the instant case. The plaintiff introduced evidence which warranted the finding that it was a second-grade and second-hand six-ply bus tire, manufactured in 1934 and used on a truck for some months by

another owner before the defendant's manager bought it. How old it was or the extent of its prior use was not made known by the seller nor did anyone on the defendant corporation's behalf attempt to ascertain these facts. The tire and others of the same kind and in the same condition, on December 22, 1936, were placed on the four wheels of the defendant's one and one-half ton Ford dump truck which was used generally in hauling and delivering fill, gravel and crushed rock both locally and to distant construction jobs. The road over which the truck travelled to and from the defendant's crushed rock plant located in the outskirts of Lewiston, was unimproved and filled with rocks and gravel. The yard of the plant in the vicinity of the crusher was covered with crushed stone and broken rock. Deliveries were made to road and bridge construction jobs in and out of which the truck undoubtedly travelled a rough and rocky road. The loads it hauled were heavy and it may be inferred that it was driven fast on the return trips.

Late in December, 1937, or early in January, 1938, after about a year's use on the truck, the treads on the front wheels were found to be worn down almost to the fabric and the tires were retreaded and reinstalled. They saw enough service through the rest of the winter and following spring and summer to again wear the tread on the right front tire down to the fabric and the rubber on the one on the left front wheel to a thickness of about one-eight of an inch. This was the condition of these tires when, on August 9, 1938, the manager of the defendant corporation, becoming, as he says, *"skeptical"* about their condition, looked at them, had three replaced, and testing the tread of the tire on the left front wheel by sticking the point of a jackknife into it and seeing one-eighth of an inch of rubber, passed it as fit for further service and allowed it to remain on the wheel. He did not remove the tire and examine the inside of it or otherwise test its condition. The blow-out came in the edge of the tread and was due to a break in the fabric. An experienced tire man, whose qualifications were not questioned, examining the tire after the collision, advanced the opinion that the strength of the fabric of the tire in general was practically gone due to age, hard usage and road heat, and that this condition was discoverable by removal of the tire from the wheel.

The jury committed no manifest error in finding that the tire

which blew out was defective and in an unsafe condition which could have been discovered by the exercise of reasonable care. Their apparent rejection of the knife test of the rubber on the tread as a compliance with the owner's duty to make a reasonable inspection of the tire, especially in the light of its known age and the use to which it had been subjected, was justified. On the issue of liability, the defendant is not entitled to a new trial.

The parents of the decedent, for whose benefit this action was brought, were advanced in years. His mother, Aurelie Dostie, was 74 years old when he was killed and she died on November 11, 1938, less than three months thereafter. His father, Eugene Dostie, was 79 years old and, so far as appears, enjoyed the usual good health of a man of his age. The decedent was 47 years old, unmarried, in good health and of good habits. In 1935–1936, for eighteen months he was employed in a dry cleansing plant earning $25.00 to $35.00 a week. During the next year, he worked for his sister in a market receiving $30.00 to $35.00 a week, but in August, 1937, this business proved unsuccessful and was sold. He had no employment thereafter until April, 1938, when for about a month and a half he trained for an inspector in a local mill but was let go for lack of color sensitiveness. He earned $164.50 at this mill but had no other income prior to his death. He had no trade or special training for any particular kind of work. Before his death, he had used up a small savings account which he had accumulated and had cashed his insurance annuities. Although he made his home with his sister and father and mother and had helped to defray the expenses of the household, he had been relieved of that responsibility by his sister on his agreement to resume payments when financially able. He had an estate of nominal value only when he died.

When the decedent was in funds he was not the sole support of his parents. The sister, Claire A. Dostie, who brings this action as administratrix of his estate, conducted a prosperous insurance agency and appears to have been the real head and mainstay of the family. She at all times contributed to or alone paid the expenses of the household, which included the support and maintenance of the parents. Conceding her assertion that the decedent, when working, paid in $15.00 to $20.00 a week toward the household expense to be true, the proportionate cost of his own sustenance must be taken

from this and his direct contribution to his parents' welfare computed accordingly. It must be repeated, however, that before he died, the decedent's money had given out, he was out of work and had no definite prospects of finding remunerative employment which would enable him to make further substantial contributions to those dependent upon him.

The recovery in this case must be limited to compensation to the parents for the pecuniary effect upon them of the death of their son. Damages may not be given by way of punishment or through sentiment or from prejudice, but as "a pure question of pecuniary compensation" for the loss sustained which the jury governed, as a general rule, by probabilities finds fairly inferable from the evidence. The sum given must be the present worth of the pecuniary benefits of which the beneficiaries have been deprived by the wrongful neglect of the defendant. Neither loss of the decedent's society and companionship, nor any grief suffered by the beneficiaries has proper place in the award. *Carrier* v. *Bornstein*, 136 Me., 1 A. (2d), 219; *Williams* v. *Hoyt*, 117 Me., 61, 102 A., 703; *Oakes* v. *Maine Central Railroad Co.*, 95 Me., 103, 49 A., 418; *McKay* v. *New England Dredging Co.*, 92 Me., 454, 43 A., 29.

In ordinary cases, the compensatory damages which may be awarded under the statute are and must be based solely on probabilities. But when a beneficiary dies *pendente lite*, his death has a controlling influence on the quantum of the recovery for his benefit. His right to compensation for his pecuniary loss vests as of the time of the death of the person killed, not at the time of bringing suit or of recovery. *Williams* v. *Hoyt*, supra; *Hammond* v. *Street Railway*, 106 Me., 209, 76 A., 672. And by the weight of authority, the right of having an action maintained therefor is not abated by the beneficiary's death, but the damages recoverable in his behalf are limited to the pecuniary loss he suffered up to the time of his death. *Sider* v. *General Electric Co.*, 238 N. Y., 64, 143 N. E., 792; *Pitkin* v. *New York Central & Hudson R. Co.*, 87 N. Y. S., 906; *Cooper* v. *Shore Electric Co.*, 63 N. J. L., 558, 44 A., 633; *City of Shawnee* v. *Cheek*, 41 Okla., 227, 256, 137 P., 724; Sutherland on Damages, Vol. 5 (4th Ed.), Sec. 1260; 16 Am. Juris. 156. We are of opinion that this rule of damages should be applied to the pecuniary loss which can be here recovered for the benefit of the

decedent's mother. In so far as *Williams* v. *Hoyt*, 117 Me., 61, 102 A., 703, *supra*, may be interpreted as in conflict with this rule, it must be and is overruled.

The decedent's situation as to finances and employment at and prior to his death have all been reviewed. They furnish ground only for a reasonable inference that his contribution to his parents for the few months his mother lived, and for the 5.09 years of expectancy allotted to his father would be small in amount and irregular in payment. It is inconceivable that this man could have supported himself and paid in for his parents' benefit more than $700.00 each and every year either or both of them lived. That is the average annual payment reflected by the award of $3600.00 which the jury made. It is clearly excessive. On the evidence, we are of opinion that $1250.00 represents the present worth of the contribution which it can be reasonably estimated this decedent would have made for his parents' benefit. A larger award was not warranted.

On the question of liability, the verdict must stand. A new trial on damages will be granted unless the plaintiff files a remittitur in accordance with this opinion. The mandate must be

*New trial as to damages only unless plaintiff will remit all of damages awarded in excess of $1250.00 within thirty days after filing of rescript.*