STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-096
GAF  MR - 7/9/2001

KASANDRA CROTEAU,[1]

        Plaintiff

v.

                                ORDER

PAULINE BRULOTTE,

        Defendant

Pending is Defendant's Motion for Summary Judgment. Following hearing, the Motion is Granted.

## FACTUAL BACKGROUND

Plaintiff Kasandra Croteau seeks to recover damages against Defendant Pauline Brulotte for injuries arising out of a car accident that occurred on November 5, 1999. Croteau's theory of recovery is negligent entrustment (Count I) and is based on the following facts:

Brulotte was the owner of a 1989 Ford Festiva. The car had approximately 60,000 miles on the speedometer when Brulotte bought it in 1995 and had had no prior collisions. Brulotte had the car serviced on various occasions including replacement of the exhaust, belt and oil as well as tune-ups. In 1997, Brulotte bought four tires for the Festiva. The last time Brulotte had the car inspected before the accident was September 1998. By June 1999, the Festiva had 150,000 miles on the speedometer.

---

[1] This action was originally brought by Etta McMillin, as mother and next friend of Kasandra Croteau. The caption of the case has since been amended to reflect that Kasandra Croteau is now of majority age.

In June 1999, Brulotte decided to move to East Machias. Before Brulotte moved, she decided to leave the Festiva in southern Maine with her daughter Ivory Brulotte and Ivory's boyfriend, Robert "Bobby" Bell. Ivory and Bobby were living together and have a daughter, Jasmine, who was an infant in the summer of 1999. Ivory was 17 years old in June 1999[2] and did not have a driver's license. Bobby had a driver's license and was of majority age. Brulotte arranged that Bobby and Ivory would maintain the car, and that she would maintain the insurance on the car. Brulotte also continued to pay for the registration of the car. Brulotte never sent any money to Ivory or Bobby to maintain the Festiva.

According to Brulotte, she and Bobby had an understanding that only he could drive the car, especially as he and Ivory may have needed it to get their daughter to medical appointments, as well as using the car to go to work or shopping. Brulotte testified that she told Ivory not to drive the car at all until she got her license. However, Croteau testified that Brulotte knew and did not care whether Ivory drove the car without a license.

Ivory disobeyed her mother's instructions not to drive the car until she was licensed. Between June and November 1999, Ivory drove the Festiva "numerous times" without a license. Ivory lied to her mother about her driving the Festiva illegally. On one occasion, Brulotte visited Ivory and caught her driving the car. She told Ivory that she would take the car away from them if Ivory ever drove it

---

[2] Ivory's date of birth is July 16, 1981. On the date of the accident therefore, Ivory was 18 years old.

again. Brulotte did take the keys away from Ivory for 24 hours and then gave them back to Bobby.

Before the accident on November 5, 1999, Brulotte understood that Bobby or Ivory had replaced at least one tire on the car. Croteau testified that she had gone with Ivory in October 1999 to replace two of the tires and had helped pay for the tires. Before the accident, Ivory would put air in the car's tires at least two or three times a week.

Croteau had driven the car three times before the accident, and at least once after the tires had been replaced. When she had driven the car before the accident she had experienced trouble with it: the car "shook a lot," and the steering wheel was hard to turn. Croteau also testified that the car's brakes would get "stuck." Croteau testified that at the time of the accident she thought the car was "junk" and that "it shouldn't have been on the road." Croteau testified that she did not feel safe in the Festiva.

On the date of the accident, Bobby and Ivory picked Croteau up from school in the car. They went back to Bobby and Ivory's residence and stayed there for about half an hour. Bobby and Croteau's boyfriend, Paul, decided to go hunting with Croteau's half-brother, Mark. Because guns could not be transported in Mark's car, Bobby and Ivory and Croteau, together with Ivory's baby Jasmine, followed Mark and Paul to the woods in the Festiva. Bobby drove the car to the woods. On route to the woods, Ivory told Bobby to get air in the tires. Bobby ignored Ivory and did not stop to put air in the tires. Croteau testified that on the day of the accident both left tires had no treads left and had metal wires sticking out of them.

3

After dropping off Bobby, Paul and Mark, Ivory asked Croteau to drive the Festiva. Croteau had just gotten her license the day before. When Croteau drove the car at the time of the accident, she again noticed difficulties in turning the wheel and "the car shook." Ivory testified that when Croteau was driving, the car did not seem to "buck" or move uncontrollably, and that Croteau did not seem to have any difficulty driving the car. After the car went around a turn it began to swerve and, according to Croteau, the wheel started to shake. The car went off the road and hit a tree.

## DISCUSSION

Croteau attempts to establish Brulotte's liability based on two theories: a theory of agency and/or a theory of negligent entrustment.

### Agency

Plaintiff first argues that Brulotte allowed the vehicle to deteriorate to the point that it was hazardous to operate, and that by virtue of Brulotte's ownership and control of the vehicle, she continued to be liable for any injuries that forseeably could have resulted from Ivory's (her agent) use of the vehicle.

In support of her position, Croteau cites Dostie v. Lewiston Crushed Stone Co., 136 Me. 284, 8 A.2d 393 (1939). In Dostie, Dominique Dostie was killed when the car in which he was riding as a passenger collided with a truck driven by an employee of the defendant. The collision occurred when a tire of defendant's truck blew out, causing it to swerve across the highway directly in the path of the car in which Dostie was riding. It was stipulated that the truck that was in the collision was owned by defendant and that its servant/agent, who was operating it, was acting

4

within the scope of his employment. Id. at 394. Dostie argued that the defendant was negligent in allowing its employee to drive a truck with a defective tire. The Law Court agreed and stated that "[i]t is negligence to use an instrumentality which the actor knows or should know to be so defective that its use involves an unreasonable risk of harm to others. If the use of the instrumentality threatens serious danger to others unless it is in good condition, there is a duty to take reasonable care to ascertain its condition by inspection." Id. at 395 (emphasis added). The Court further stated that:

> Generally speaking, it is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled, and not become a source of danger to its occupants or to other travelers.
>
> To this end, the owner or operator of a motor vehicle must exercise reasonable care in the inspection of the machine, and is chargeable with notice of everything that such inspection would disclose. Id. (emphasis added).

Dostie does not control the present case. First, Dostie does not establish a per se rule holding the owner of a vehicle liable for its defective condition and any injuries resulting from the defective condition. Rather, the Court specifically holds the "owner or operator" responsible for maintaining the car in reasonably good condition. Second, it was stipulated that the driver of the vehicle in Dostie was an agent for the defendant. In the present case, the evidence does not establish that Ivory was acting as Brulotte's agent. She was not Brulotte's employee and was not using the car in furtherance of any affairs of, or on behalf of Brulotte. Neither can she be classified as Brulotte's agent solely because she is Brulotte's daughter. Therefore, Ivory's knowledge of the defective condition of the car and her request

5

nonetheless that Croteau drive the car, cannot be imputed to her mother.[3]

## Negligent Entrustment

Plaintiff next argues that Brulotte negligently entrusted the vehicle to Ivory. Negligent entrustment is not a vicarious or imputed liability theory. Rather, a parent's liability in such cases is based on the direct negligence of the parent. Simmons, Zillman & Gregory, Maine Tort Law § 16.04 at 533 & n. 67 (1999). In Merchant v. Mansir, 572 A.2d 493 (Me. 1990), the Law Court adopted the principle set forth in RESTATEMENT (SECOND) OF TORTS § 316 (1965). This section provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
> (a) knows or has reason to know that he has the ability to control his child, and
> (b) knows or should know of the necessity and opportunity for exercising such control.
> (emphasis added).

In Merchant, a minor loaned a bicycle without brakes to the plaintiff's child. The Law Court, citing § 316, declined to find liability on the ground that there was no evidence that the defendant father knew that the two children were using a defective bicycle or even that the plaintiff's child was visiting his home. Merchant v. Mansir, 572 A.2d at 494. The plaintiff therefore failed to show that the defendant knew or should have known that he needed to control his stepchild's use of the bicycle. Id.

---

[3] Plaintiff does not really argue that Brulotte herself was aware of the condition of the car. At the time of the accident, Brulotte was living in East Machias. In Plaintiff's Reply Statement of Material Facts, Plaintiff denies both that the car was in good condition in June 1999 and that Bobby and Ivory were responsible for the maintenance of the car. Plaintiff's Reply SMF ¶¶ 20, 21. Plaintiff admits that before the accident Brulotte knew that Bobby or Ivory had replaced at least one tire on the car and had performed other maintenance on the car. Plaintiff's Reply SMF ¶ 25. Plaintiff alleges that before the accident Ivory knew the tires needed to be replaced and that Ivory put air in the tires two or three times a week. PSMF ¶¶ 33, 34. However, Plaintiff provides no evidence whatsoever that Brulotte knew of the condition of the tires in November 1999. Because Ivory is not Brulotte's agent, her knowledge cannot be imputed to Brulotte.

6

Defendant argues that § 316 does not apply because at the time of the accident, Ivory was 18 years old. However, RESTATEMENT (SECOND) OF TORTS § 390 (1965) provides an alternative basis for liability on the part of Brulotte without regard to her role as a parent or Ivory's age. Section 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Based on § 390, Croteau argues that Brulotte, who retained ownership and control of the car, negligently entrusted the vehicle to her "unlicensed, inexperienced and minor daughter knowing that the vehicle was in a deplorable state of repair." Plaintiff's Opposition to Summary Judgment, p. 8. If Ivory had been driving at the time of the accident, a factual issue may have been generated regarding Brulotte's knowledge and acquiescence in allowing her unlicensed daughter to drive the car. However, because this is not the case, Ivory's inexperience and status as an unlicensed driver is not an issue.[4] As well, as noted above, Ivory was not acting as an agent for Brulotte. Therefore, even assuming that Brulotte negligently entrusted the car to Ivory, she cannot be held liable for Ivory negligently entrusting the car to Croteau.

Apparent Authority

---

[4] Both parties cite Broadwater v. Dorsey, 688 A.2d 436 (Md. 1997) to support their position (actually, Plaintiff inadvertently cites to Broadwater v. Dorsey, 666 A.2d 1282 (Md. App. 1995) and refers to this case as a Maine case. Broadwater is a Maryland case and the lower court opinion cited by Plaintiff was overturned). However, Broadwater involved the issue of whether parents of an adult child who give or sell their child a car with knowledge of the child's drug use problem and reckless conduct may be held answerable to a third party subsequently injured by the child's negligent use of the car. The Maryland Court of Appeals held that the parents were not liable to the injured third party. Broadwater is factually distinguishable and therefore unhelpful to the present case. In the present case, because Ivory was not driving the car when the accident occurred, the issue is not whether Brulotte knowingly and negligently allowed Ivory to drive the car.

7

Plaintiff argues that Brulotte may be liable under the theory of apparent authority. Whether an agency relationship exists is generally a question of fact. Steelstone Industries v. North Ridge Ltd., 1999 ME 132, ¶ 12, 735 A.2d 980, 983. Apparent authority is authority "which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. Apparent authority exists only when the *conduct of the principal* leads a third party to believe that a given party is his agent." Id. ¶ 13 (italics in original). Apparent authority can arise if the principal knowingly or negligently holds someone out as possessing authority to act for him or her. "A principal therefore, creates apparent authority 'by written or spoken words or any other conduct of the principal, which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Id. (citing RESTATEMENT (SECOND) OF AGENCY § 27 (1958)). Apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized. RESTATEMENT (SECOND) OF AGENCY § 8, comment c.

The theory of apparent authority does not apply to this case. Plaintiff does not point to any facts whatsoever that could possibly demonstrate that Brulotte, through her actions/words, led Croteau to believe that Ivory was acting as Brulotte's agent.

Vicarious Liability

Plaintiff argues that RESTATEMENT (SECOND) OF AGENCY § 214 is applicable to the

8

present case.[5] Section 214 states:

> A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.

In the present case, Plaintiff argues that the failure of Ivory to properly maintain and repair the vehicle was a non-delegable duty of Defendant. However, this argument presupposes an agency relationship existed between Brulotte and Ivory. As noted above, Ivory cannot be classified as Brulotte's agent.

The entry will be as follows:

> Defendant's Motion for Summary Judgment is Granted. Judgment will be entered for the Defendant on Plaintiff's Complaint.

The clerk may incorporate this order in the docket by reference.

Dated:     July 9, 2001

Ronald R. Coles, Esq. - PL
Jonathan W. Brogan, Esq. - DEF

G. Arthur Brennan
Justice, Superior Court

---

5 Plaintiff notes that the Law Court adopted § 214 in Robinson v. Washington County, 529 A.2d 1357 (Me. 1987). In Robinson, a pretrial detainee brought an action against Washington County and sheriff alleging that she suffered a miscarriage due to grossly negligent and intentional conduct of doctors and officials of Franklin County jail to which she was transferred. The plaintiff contended that she was in the defendants' official custody at the time of her miscarriage, and therefore any negligence on the part of Franklin County officials must be attributable to Washington County and sheriff. The Law Court held that the lower court erred in not allowing the plaintiff an opportunity to prove that Washington County retained legal custody of the plaintiff to the extent that the county could be held liable for her injuries under a theory of vicarious liability. Id. at 1362 & n. 5.

9