SELLERS, Justice.
*846 In this personal-injury action, the DeKalb-Cherokee Counties Gas District ("DC Gas") appeals from a judgment of the DeKalb Circuit Court denying DC Gas's renewed motion for a judgment as a matter of law ("JML") or, in the alternative, for a new trial. We reverse the trial court's judgment and render a judgment for DC Gas.
On October 10, 2011, the plaintiff, Timothy Raughton, an employee of the City of Fort Payne, was working at the city landfill. One of his duties on that day was to tell users of the landfill where to dump their refuse. On that same day, Neal Ridgeway, in his capacity as an employee of DC Gas, drove a dump truck to the landfill. The bed of the dump truck contained bricks and concrete blocks that had been collected from a site on which DC Gas planned to have constructed an office building.
While Ridgeway dumped the contents of the truck at the landfill, Raughton stood next to the truck. He testified that he was standing there because the truck shielded him from the wind, which had been blowing dust in his eyes. At some point during the dumping process, the debris in the bed of the truck became lodged and would not fall out. In an effort to dump the remaining debris, Ridgeway performed a maneuver, which the evidence in this case indicates is commonly performed by drivers of dump trucks-he put the truck into gear and released the clutch, causing the truck to shake and to move forward slightly. As he was performing this clutch-release maneuver, the side wall of the truck bed fell from the truck, striking and injuring Raughton. There is no evidence in this case indicating that the clutch-release maneuver violated any formal safety standards.
Raughton sued DC Gas, alleging negligence and wantonness. The trial court entered a summary judgment in favor of DC Gas on Raughton's wantonness claim, but his negligence claim proceeded to trial.
When asked during the trial how the side wall was attached to the truck, Ridgeway testified that it "sits down in three or four standards on the side, and it's got a pin-It's got a pin at the front. I won't really say a pin, but it's got a way it attaches at the very front up there." There is no other testimony or evidence as to how the side wall was attached to the truck. There also is no testimony or evidence indicating exactly how the side wall became detached from the truck.[1]
The jury rendered a verdict in favor of Raughton in the amount of $100,000. The trial court entered a judgment on that verdict and denied DC Gas's renewed motion for a JML. DC Gas appealed.
" 'The standard of review applicable to a ruling on a motion for [a JML] is identical to the standard used by the trial court in granting or denying [that motion]. Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.
" '....
*847 " '... In ruling on a motion for a [JML], the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been "substantial evidence" before the jury to create a question of fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." '
" American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67 (Ala. 1993). (Citations omitted.)."
Acceptance Ins. Co. v. Brown, 832 So.2d 1, 12 (Ala. 2001). Questions of law are reviewed de novo. Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala. 2006).
During the trial, Raughton proposed two theories of liability. He argued that Ridgeway, DC Gas's employee, acted negligently in choosing to perform the clutch-release maneuver while Raughton was standing next to the truck and that DC Gas was negligent in failing to have the dump truck properly inspected.
DC Gas argues on appeal that it cannot be held liable for negligence based on Ridgeway's performing the clutch-release maneuver because, DC Gas asserts, no evidence was presented indicating that it was foreseeable that the maneuver could result in the side wall of the truck bed becoming detached and falling from the truck. DC Gas points to Butler v. AAA Warehousing & Moving Co., 686 So.2d 291 (Ala. Civ. App. 1996). In that case, the defendant had assembled a multi-level reviewing stand, which was then made available for people to stand on while watching a Mardi Gras parade in Mobile. The plaintiff sued the defendant after she was injured when her foot became caught in an open space between two levels of the stand. The trial court in Butler granted the defendant's summary-judgment motion. On appeal, the Court of Civil Appeals noted that "[n]egligence has been defined as the 'failure to do what a reasonably prudent person would have done under the same or similar circumstances.' " 686 So.2d at 293 (quoting Elba Wood Prods., Inc. v. Brackin, 356 So.2d 119, 122 (Ala. 1978) ). The court concluded that the plaintiff had not presented substantial evidence indicating that the defendant reasonably should have foreseen that someone's foot could get caught in the open space between the levels of the stand. To the contrary, people responsible for erecting and inspecting the stand testified that they were unaware of any reason to consider the uncovered space between the levels a safety hazard; a forensic engineer testified that the uncovered space did not violate any safety standards; and there had been no similar accidents involving the stand in the previous 25 years. Thus, the Court of Civil Appeals concluded, the evidence established that the defendant "did not breach its standard of care in erecting the reviewing stand and in leaving the spaces open." 686 So.2d at 294. The court affirmed the summary judgment for the defendant.
In Motor Terminal & Transportation Co. v. Millican, 244 Ala. 39, 12 So.2d 96 (1943), the plaintiff sued the employer of a truck driver after a tire and rim detached from the truck while it was in operation and struck the plaintiff. This Court concluded that the defendant could be held liable for negligence based on evidence indicating that such an accident was foreseeable because the defendant's agents knew the truck was in poor condition and knew that its wheels had become detached on prior occasions. In Clayton v. Fargason, 730 So.2d 160 (Ala. 1999), the Court held that a defendant driver's belief that children had been struck by vehicles in the area in *848 which he was driving was relevant to the plaintiff's negligence claim because such a belief "would cause [the defendant] to have knowledge of potential hazards that he should consider." 730 So.2d at 163. See also Pritchett, 938 So.2d at 937 (noting that the key factor in determining whether a duty exists is whether the injury was foreseeable by the defendant); Alabama Power Co. v. Henderson, 342 So.2d 323, 326 (Ala. 1976) ("The ultimate test of a defendant's duty to use due care is the foreseeability of the harm which would result if due care was not exercised."); and City of Birmingham v. Latham, 230 Ala. 601, 606, 162 So. 675, 678 (1935) ("[W]hile a person is expected to anticipate and guard against all reasonable consequences, yet he is not expected to anticipate and guard against that which no reasonable man would expect to occur.").
The testimony at trial indicates that the clutch-release maneuver performed by Ridgeway is a common method of dislodging and dumping the contents of dump trucks. There was no testimony or other evidence indicating that performing the maneuver violated any formal safety standards. Terry Tinsley, who was Ridgeway's supervisor at the time the accident occurred, testified that he was unaware of any other instance during the 29 years he had worked for DC Gas in which the side wall of a dump truck had loosened or fallen off. Likewise, Ridgeway, who, at the time of the accident, had been driving dump trucks for 15 years, answered in the negative when asked if he had "ever known in [his] experience with DC Gas [the] side wall to fall off" or "get loose." Raughton himself testified that he had never seen a side wall detach from a dump truck when the clutch-release maneuver was being performed. Indeed, as DC Gas points out, Raughton chose to stand next to the dump truck while Ridgeway unloaded it, further indicating the remoteness of any risk that the side wall would fall onto him. We agree with DC Gas that, because there is no evidence indicating that it was foreseeable that the side wall of the dump truck could become detached as a result of performing the clutch-release maneuver, DC Gas cannot be held liable for negligence based on Ridgeway's performing that maneuver.[2]
DC Gas had purchased the dump truck new in 2001. Raughton argued at trial that DC Gas could be held liable based on its alleged failure to properly inspect the bed of the dump truck in the 10 years preceding the accident. In Motor Terminal & Transportation Co., supra, a case that involved an accident in which a tire and rim on a truck became detached and struck the plaintiff, this Court stated:
"The principle is well established that it is negligence to use an instrumentality which the actor knows or should know to be so defective that its use involves an unreasonable risk of harm to others. If the use of the instrumentality threatens serious danger to others unless it is in good condition, there is a duty to take reasonable care to ascertain its condition by inspection. Tannahill v. Depositors' Oil & Gas Co., 110 Kan. 254, 203 P. 909 [ (1922) ] ; Petersen et al. v. Seattle Automobile Co., 149 Wash. 648, 271 P. 1001 [ (1928) ] ; Sears v. Interurban Transp. Co., 14 La.App. 343, 125 So. 748 [ (1930) ] ; Holt v. Eastern Motor Co., 65 Ga.App. 502, 15 S.E.2d 895 [ (1941) ] ;
*849 Dostie v. Lewiston Crushed Stone Co., 136 Me. 284, 8 A.2d 393 [ (1939) ].
"In Huddy Automobile Law, Vol. 3-4, p. 127 et seq., the following rule, as applied to motor vehicles, has been laid down in this language:
" 'Generally speaking, it is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled, and not become a source of danger to its occupants or to other travelers.
" 'To this end, the owner or operator of a motor vehicle must exercise reasonable care in the inspection of the machine, and is chargeable with notice of everything that such inspection would disclose. This rule applies where the operator is the owner of the vehicle or rents it from another, or permits another to use it, or lets it to another for hire. But in the absence of anything to show that the appliances were defective, the owner or driver is not required to inspect them before using the car or permitting it to be used.' "
244 Ala. at 43, 12 So.2d at 99. The evidence in Motor Terminal & Transportation Co. indicated that the "threads which held the tire and rim on the wheel were stripped and were old, rusty and worn." 244 Ala. at 42, 12 So.2d at 98. As previously noted, the evidence in that case also indicated that the defendant's agents had knowledge that the truck was in poor condition and that its wheels had fallen off in the past.
In the present case, although Tinsley answered in the affirmative when asked during the trial if Ridgeway "was responsible for making sure the side walls [and] the tailgate were safely secured to the truck," he later testified that Ridgeway's daily inspection consisted of a "walk-around" procedure that is taught to commercial driver's license applicants, during which Ridgeway would visually check fluid levels and components such as tires, hitches, and lights. Ridgeway testified that he would also visually check the side walls. The evidence indicates that Ridgeway had never physically checked for loose side walls and that DC Gas had never had the truck bed professionally inspected.[3]
Unlike the circumstances in Motor Terminal & Transportation Co., however, there was no evidence indicating that the side wall of the dump truck had become detached in the past or that DC Gas's agents knew that it might become detached. Moreover, no evidence was presented clearly showing how the side wall was attached to the truck or showing exactly why and how it had become detached. Thus, there was no evidence presented indicating that an inspection would have revealed that it might become detached and, therefore, that an inspection would have prevented the accident. See Wilbanks v. United Refractories, Inc., 112 So.3d 472, 475 (Ala. 2012) (holding that the supplier of a welder was entitled to a summary judgment in a negligent-inspection action premised on the explosion of the welder, in part because "there was no evidence indicating that an inspection of [a particular component of the welder] would have prevented the explosion"). Accordingly, the Court concludes that DC Gas cannot be held liable based on its alleged failure to properly inspect the truck.
Based on the foregoing, we reverse the trial court's judgment denying DC Gas's renewed motion for a JML, and we render a judgment in favor of DC Gas.
*850 REVERSED AND JUDGMENT RENDERED.
Stuart, C.J., and Bolin and Wise, JJ., concur.
Shaw, J., concurs in the result.

In his appellee's brief, Raughton suggests that the side wall may have fallen from the dump truck because the debris in the bed of the truck "had unsafely shifted." He does not point to any portion of the record in support of that suggestion, and this Court was unable to locate any trial testimony regarding the alleged unsafe condition of the load in the dump truck.

The Court notes that the result in this appeal is the same regardless of whether the Court analyzes DC Gas's liability in terms of whether Ridgeway owed Raughton a specific duty to refrain from performing the clutch-release maneuver or whether there was a lack of substantial evidence indicating that Ridgeway breached a more general duty to operate the dump truck in a safe manner.

The record suggests that, pursuant to Rule 30(b)(6), Ala. R. Civ. P., Tinsley testified as DC Gas's representative during deposition. By the time he testified at trial, however, he was no longer employed by DC Gas.